UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBERT EMANUEL RICHARDSON,

        Plaintiff,

    v.                                             Case No. 24-C-543

OFFICER KEITH RAGER,

        Defendant.

## DECISION AND ORDER

Plaintiff Robert Emanuel Richardson, who is acting as his own lawyer, brought this civil rights action under 42 U.S.C. § 1983 against Green Bay Police Officer Keith Rager, alleging Officer Rager violated his rights secured under the Fourth and Fourteenth Amendments to the United States Constitution during a traffic stop on April 29, 2022. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Presently before the court is Officer Rager's motion for summary judgment. For the following reasons, Officer Rager's motion will be granted, and this case will be dismissed.

## PRELIMINARY MATTERS

Officer Rager filed his motion for summary judgment on May 1, 2025. As required by the local rules, Officer Rager included a copy of Federal Rule of Civil Procedure 56, Civil Local Rule 7, and Civil Local Rule 56 in his motion for summary judgment. *See* Dkt. No. 36. After the court granted him an extension, Plaintiff responded to the motion with a brief in opposition, Dkt. No. 47, but did not file any response to Officer Rager's statement of facts as required by the local rules. *See* Civil L.R. 56(b)(2)(A)–(B) ("Each party opposing a motion for summary judgment must file within 30 days of service of the motion . . . a memorandum of law [and] a concise response to the

moving party's statement of facts . . . ."). A week later, Plaintiff filed an amended brief in opposition that is functionally identical to his original brief in opposition, adding only a reference to the Supreme Court's recent decision in *Barnes v. Felix*, 605 U.S. ---, 145 S. Ct. 1353 (2025); he again failed to respond to Officer Rager's statement of facts. Accordingly, Officer Rager's proposed facts are deemed admitted for the purposes of deciding summary judgment. *See* Fed. R. Civ. P. 56(e)(2)–(3). Plaintiff's pro se status does not change this result. *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)) ("However, it is also well established that pro se litigants are not excused from compliance with procedural rules."); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). Additionally, many of the events giving rise to this action were captured on squad car and body camera recordings, so the court will view the facts in the light depicted by the video evidence. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). With these considerations in mind, the court turns to the substance of the motion.

## BACKGROUND

At approximately 9:39 p.m. on April 29, 2022, Officer Rager was on routine patrol in his squad car, traveling westbound in a 30-miles-per-hour zone on Main Street in the City of Green Bay. At the time, Officer Rager's radar unit was scanning the speeds of approaching traffic in the southbound lane. Officer Rager's radar unit scanned a pickup truck with Kansas plate 643EZB, which was driven by Plaintiff, traveling at 52 miles per hour in the southbound lane. After making a U-turn, Officer Rager pursued the vehicle, observing it speed up and pass several other cars. Officer Rager caught up with the vehicle after it was stopped behind traffic at a red light. After the light turned green, the vehicle again attempted to speed up and maneuver around other vehicles at which point Officer Rager activated his red and blue emergency lights to initiate a traffic stop.

The vehicle moved into the right lane and activated its right directional before turning into a parking lot. Rather than stopping immediately after clearing traffic, the vehicle continued through the parking lot, driving behind the building the parking lot serviced and eventually making an about face turn. At that point, Officer Rager's squad and the vehicle were roughly perpendicular to one another, with Officer Rager's squad's headlights shining directly at Plaintiff in the driver's seat of the vehicle.

After the vehicle came to a stop, Officer Rager exited his squad and, from behind his squad door, ordered Plaintiff to stop the car and put his hands up. Officer Rager also ordered a female in the passenger seat to put her hands up. The driver-side windows of Plaintiff's vehicle were rolled down, and Plaintiff and the female passenger initially complied with Officer Rager's directives. Plaintiff, however, quickly lowered his left hand so that it was no longer visible. Plaintiff then asked why he was being pulled over to which Officer Rager responded, "speeding, what do you think?" Dkt. No. 38-2 at 1:16. Plaintiff then repeatedly asked Officer Rager to tell him what speed he was going, intermittently raising his hands and then lowering them such that they were out of Officer Rager's view.

A second officer arrived on the scene about a minute later, joining Officer Rager in demanding that Plaintiff put his hands up. Plaintiff continued to raise his hands only briefly before lowering them. As Plaintiff continued to argue with Officer Rager and the other officers that were now on the scene, Officer Rager twice directed the female passenger to step out of the car. She failed to comply. Officer Rager then ordered Plaintiff to step out of the car multiple times, explaining that he was being placed under arrest for obstructing. Plaintiff failed to comply. Instead, he made a phone call and continued to question why he was pulled over and being placed under arrest.

3

Roughly two-and-a-half minutes into the traffic stop, an officer deployed pepper balls at the driver side of Plaintiff's vehicle. In response, Plaintiff immediately rolled up both driver-side windows but remained in the vehicle. The female passenger, on the other hand, exited the vehicle and walked towards the officers, dropping a plastic baggie along the way. Noticing as much, an officer exclaimed, "she just dropped marijuana out of her shirt." Dkt. No. 38-5 at 10:42. An officer fired another volley of pepper balls at Plaintiff's vehicle, but he persisted in refusing to comply with orders to get out of the vehicle. At one point, Officer Rager asked Plaintiff, "Is there anything I can say to get you out of the car?" Dkt. No. 38-2 at 5:30. Plaintiff, in the midst of other remarks, yelled in response, "No." *Id.* at 5:36. So the saga continued. Over seven minutes into the traffic stop, Plaintiff was visibly agitated; he continued to yell at the officers, wave his hands, and pound the interior of his vehicle. He eventually bluntly stated, "I'm not gettin' out [of the vehicle]." *Id.* at 8:8:37.

Having concluded that voluntary compliance was not likely, an arrest team of officers, including Officer Rager, approached the driver-side door from the rear of the vehicle. One of the officers had his firearm drawn while another handled a police K9; the others stood in a support formation. The group approached the driver-side door, opened it, and Officer Rager made initial contact with Plaintiff, attempting to remove him from the vehicle. But Plaintiff resisted, and Officer Rager and others were unsuccessful in prying Plaintiff from the vehicle. Thereafter, three officers, but not Officer Rager, deployed tasers against Plaintiff, allowing Officer Rager and others to remove Plaintiff from the vehicle, pin him face down on the pavement, and handcuff him. Though Plaintiff expressed a willingness to cooperate and walk on his own accord, he continued to yell at the officers while using profane language. Officers, not including Officer Rager, therefore placed Plaintiff in the WRAP System—a restraint that immobilizes a person's lower

body by placing it in a fabric, web-like casing—before placing him on a stretcher to be transported by ambulance to St. Vincent's Hospital for medical clearance.

While Plaintiff was being prepared to be transported from the scene, Officer Rager conducted a search of Plaintiff's vehicle. In the glove compartment, Officer Rager found rolling papers; sandwich bags; and a digital scale containing trace amounts of a green, leafy material. He also found an empty alcohol container on the passenger side of the vehicle. Plaintiff was ultimately arrested for disorderly conduct, obstructing an officer, resisting an officer, possession of marijuana, and possession of drug paraphernalia.

A little more than two years after the above events, Plaintiff brought this action.

## LEGAL STANDARD

Summary judgment is proper where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citation omitted). Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Plaintiff asserts that over the course of the roughly 20-minute ordeal, Officer Rager violated the Fourth Amendment as applied to the States under the Fourteenth Amendment by effectuating a false arrest, using excessive force, and illegally seizing Plaintiff's property. Plaintiff also alleges that Officer Rager racially profiled him in violation of his Fourteenth Amendment

right to equal protection of the laws. Officer Rager moves for summary judgment as to all claims, arguing that Plaintiff has not put forth evidence from which a reasonable jury could find for him as to any of his four claims. In the alternative, Officer Rager asserts he is entitled to qualified immunity. The mere recitation of the facts is more than enough to refute all of Plaintiff's claims. Because the court finds that no constitutional violation has occurred, it does not reach the issue of qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

**A.    False Arrest**

"The Fourth Amendment to the Constitution protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Carmichael v. Village of Palatine*, 605 F.3d 451, 456 (7th Cir. 2010) (quoting U.S. Const. amend. IV). Like a physical arrest, "[t]he temporary detention of an individual during the stop of an automobile by the police, even if only for a short period of time and for a limited purpose, constitutes the seizure of a person within the meaning of this constitutional provision." *Id.* (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). "[R]easonable suspicion of a traffic violation provides a sufficient basis to justify a traffic stop." *United States v. Jackson*, 962 F.3d 353, 357 (7th Cir. 2020). "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Kansas v. Glover*, 589 U.S. 376, 380 (2020) (citation omitted).

Here, Officer Rager had more than a mere reasonable suspicion that Plaintiff had committed a traffic violation. The radar in Officer Rager's squad indicated that Plaintiff was traveling at a speed of 52 miles per hour in a 30-miles-per-hour zone. Accordingly, Officer Rager was reasonable in believing that Plaintiff had committed a traffic violation. *Jackson*, 962 F.3d at

6

357 ("Even the reasonable belief that a driver committed a minor traffic infraction will support a stop."). Officer Rager therefore did not violate the Fourth Amendment in conducting the initial traffic stop of Plaintiff.

Nor did officer offend the Constitution in arresting Plaintiff. "To prevail on a Fourth Amendment false-arrest claim, a plaintiff must show that there was no probable cause for his arrest." *Braun v. Village of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022) (citation omitted). "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon County*, 705 F.3d 706, 714 (7th Cir. 2013). "Probable cause does not require certainty. It is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." *Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015) (cleaned up). And "the officer's belief that the arrestee was committing a crime need only be reasonable." *Abbott*, 705 F.3d at 714. "[T]he probable cause inquiry is an *objective* one; the subjective motivations of the officer do not invalidate a search otherwise supported by probable cause." *Carmichael*, 605 F.3d at 457 (citation omitted).

Here, Officer Rager had more than mere probable cause to believe that Plaintiff was committing a crime. Under Wis. Stat. § 946.41, "whoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority is guilty of a Class A misdemeanor." Due to reasonable concerns over officer safety as a result of the Plaintiff's atypical behavior, Officer Rager ordered Plaintiff to keep his hands up. Plaintiff did not comply. Other officers ordered Plaintiff to keep his hands up. Plaintiff did not comply. Officer Rager ordered Plaintiff to step out of the vehicle and lay on his stomach. Plaintiff did not comply. Other

7

officers ordered the same. Plaintiff did not comply—even after being pepper balled. Officer Rager's demands of Plaintiff were both reasonable and lawful. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) ("We hold only that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."); *Barnes*, 605 U.S. at ---, 135 S. Ct. at 1360–61 (Kavanaugh, J., concurring) (writing separately to note the dangers of traffic stops for police officers). Officer Rager was thus reasonable in believing that Plaintiff's failure to comply with his and other officer's orders was a violation of Wis. Stat. § 946.41. Accordingly, Officer Rager did not violate the Fourth Amendment as he had probable cause to arrest Plaintiff.

It follows that Plaintiff's false arrest claim fails as a matter of law; it must be dismissed.

**B.     Excessive Force**

Plaintiff also contends that Officer Rager used excessive force in effectuating his arrest, thus violating the Fourth Amendment. Fourth Amendment excessive force claims are assessed under the objective reasonableness test. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The nature and extent of force that may reasonably be used to effectuate an arrest depends on the specific circumstances of the arrest, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

Plaintiff cannot establish that any force used by Officer Rager was unreasonable. For starters, the record reflects that Officer Rager did not deploy pepper balls at Plaintiff, did not tase Plaintiff, and did not assist in placing Plaintiff in the WRAP. It is a "well-established principle of law that a defendant must have been 'personally responsible' for the deprivation of the right at the root of a § 1983 claim for that claim to succeed." *Backes v. Village of Peoria Heights*, 662 F.3d 866, 869 (7th Cir. 2011) (citation omitted). Where a supervisor "approves of the conduct and the basis for it," he may be liable even if he did not "participate directly in the deprivation." *Id.* at 869–70 (citation modified). Plaintiff advances no argument as to why Officer Rager should be held liable as a supervisor, nor does the evidence support as much. Officer Rager did not order the use of pepper balls, tasers, or the WRAP. At the very most, he was aware of that pepper balls, tasers, and the WRAP would potentially be used before they were. But that is not enough to find Officer Rager liable for uses of force he did not directly participate in. *See id.* at 870 (affirming summary judgment in favor of an officer who served only as a "mere consultant" when other officers elected to use pepper balls to remove an individual from his car).

Even if Officer Rager had been directly involved in the deployment of pepper balls, tasers, and the WRAP, no violation would be shown. Given Plaintiff's conduct and his defiance of all lawful commands, the use of such force was justified. Instead of pulling over to the side of the road and cooperating in what would have amounted to a five- or ten-minute traffic stop, Plaintiff pulled behind a building, shielding his car and movements from public view in such a way as to raise serious concerns for the safety of any reasonable officer. As a result, what should have been a brief encounter with one officer became a drawn out ordeal requiring response by a whole team of officers.

9

Case 1:24-cv-00543-WCG | Filed 07/10/25 | Page 9 of 12 | Document 50

That leaves Officer Rager's involvement in removing Plaintiff from his vehicle and forcing him to the pavement. In the face of a resisting arrestee, officers are entitled to use the amount of force necessary to gain control and compliance. *Fitzgerald v. Santoro*, 707 F.3d 725, 734 (7th Cir. 2013) (collecting cases). And officers are "allowed to graduate their response to the demands of any particular situation." *Est. of Phillips v. City of Milwaukee*, 123 F.3d 586, 593 (7th Cir. 1997) (citation modified). Because Plaintiff refused to comply with Officer Rager's command to get out of the vehicle on his own, the use of force by Officer Rager and the other officers to remove Plaintiff from the car and pin him to the ground so as to handcuff him and avoid injury to Plaintiff or the officers was objectively reasonable. *Padula v. Leimbach*, 656 F.3d 595, 603–604 (7th Cir. 2011) (collecting cases and affirming summary judgment in favor of officers who "forcibly removed an individual from his car when he did not comply with their command to get out on his own" and held him in a "prone position for a fairly short period of time while trying to prevent him from injuring himself or an officer" (cleaned up)).

For the foregoing reasons, Officer Rager is entitled to summary judgment on Plaintiff's excessive force claim, and it will be dismissed.

**C.     Illegal Seizure**

The last of Plaintiff's claims brought under the Fourth Amendment is based on Officer Rager's alleged illegal seizure of property from Plaintiff's vehicle. To reiterate, the Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. "[W]arrantless searches 'are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Paige*, 870 F.3d 693, 701–02 (7th Cir. 2017) (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). Here, it is undisputed that Officer Rager did not have a warrant prior to searching Plaintiff's vehicle. Thus,

the question is whether an exception permitted Officer Rager's warrantless search. One did: the "automobile exception." Under this exception, "an officer may search a vehicle when the officer has probable cause to believe that the vehicle contains evidence of criminal activity." *Id.* at 702 (citing *Maryland v. Dyson*, 527 U.S. 465, 467 (1999) (per curiam); *Carroll v. United States*, 267 U.S. 132, 153 (1925)). And "if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of *every part of the vehicle* and its contents that may conceal the object of the search." *United States v. Hays*, 90 F.4th 904, 907 (7th Cir. 2024) (citation modified).

Here, the record reflects that the female passenger dropped a baggie of what officers immediately believed was marijuana when she exited the vehicle. "It is well settled that officers can search a car without a warrant where there is probable cause to believe that illegal substances are present." *Id.* It is of no moment that it was the female passenger and not Plaintiff that dropped the suspected marijuana, for "an officer ha[s] the authority to conduct a warrantless search of a car when he discover[s] the passenger in possession of contraband." *Id.* (citations omitted); *see also Wyoming v. Houghton*, 526 U.S. 295, 304–05 (1999) ("[A] car passenger . . . will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing."). Thus, Officer Rager had probable cause to search Plaintiff's vehicle, so the search did not offend the Fourth Amendment.

Accordingly, Plaintiff's illegal search claim fails as a matter of law and will be dismissed.

**D.     Racial Profiling**

Finally, Plaintiff asserts that Officer Rager racially profiled him in violation of the equal protection clause of the Fourteenth Amendment. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("[T]he Constitution prohibits selective enforcement of the law based on considerations such as race. . . . [T]he constitutional basis for objecting to intentionally discriminatory application

11

Case 1:24-cv-00543-WCG     Filed 07/10/25     Page 11 of 12     Document 50

of laws is the Equal Protection Clause, not the Fourth Amendment."). To succeed on a racial profiling claim, a plaintiff must prove that the defendant's "actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001) (citations omitted). "To prove discriminatory effect, plaintiffs must show that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and that the plaintiffs were treated differently from members of the unprotected class. Plaintiffs can do so by identifying individuals or by presenting statistics." *Taylor v. Schwarzhuber*, 132 F.4th 480, 490 (7th Cir. 2025) (cleaned up).

Plaintiff has failed to present the court with any evidence of discriminatory effect. He has not "identif[ied] any similarly situated individuals treated differently, present[ed] any statistics that suggest discriminatory effect, or provide[d] any other type of proof." *Id.* Common sense tells one that any individual who acted in the manner Plaintiff did would be treated in the same way by law enforcement officers. No one, no matter his or her race, is entitled to speed on city streets and then refuse with impunity to comply with the lawful commands of police. Accordingly, Plaintiff's racial profiling claim brought under the equal protection clause of the Fourteenth Amendment fails as a matter of law; it must therefore be dismissed.

## CONCLUSION

For the above reasons, Officer Rager's motion for summary judgment (Dkt. No. 36) is **GRANTED**. This case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 10th day of July, 2025.

_____
William C. Griesbach
United States District Judge

12

Case 1:24-cv-00543-WCG   Filed 07/10/25   Page 12 of 12   Document 50